# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THERMAL DESIGN, INC.,**

        Plaintiff,

  -vs-

**Case No. 08-C-828**

**GUARDIAN BUILDING PRODUCTS, Inc.,
GUARDIAN BUILDING PRODUCTS
DISTRIBUTION, INC., GUARDIAN
FIBERGLASS, INC. and CGI/SILVERCOTE, Inc.,**

        Defendants.

## DECISION AND ORDER

This matter comes before the Court on Thermal Design, Inc.'s motion to compel discovery of certain electronically stored information (ESI). Pursuant to the parties' Agreement for Electronic Discovery, the Guardian Defendants already produced more than 1.46 million pages (91 GB) of ESI. This production was the result of four months spent analyzing and collecting information, then another three months processing the data for production, at a total cost of almost $600,000. Even after receiving all of this information, Thermal Design claims that it is entitled to more ESI.

Federal Rule of Civil Procedure 26(b)(2)(B) provides that a party "need not provide discovery of electronically discovered information from sources that the party identifies as not reasonably accessible because of undue burden or cost." In the event of a motion to compel or for a protective order, "the party from whom discovery is sought must show that

the information is not reasonably accessible because of undue burden or cost." *Id.* As explained by the Rules Commentary, the "responding party has the burden as to one aspect of the inquiry – whether the identified sources are not reasonably accessible in light of the burdens and costs required to search for, retrieve, and produce whatever responsive information may be found." Advisory Committee Notes, 2006 Amendment, Subdivision (b)(2). Thermal Design wants the Guardian Defendants to search all archived e-mail accounts and shared network drives, without any restriction as to custodian or individual. According to the defendants, this process would take several months, and having the results indexed and searched would cost an additional $1.9 million dollars. This estimate is based on extrapolating the cost already incurred by the Guardian Defendants in processing ESI for Thermal Design. Moreover, reviewing the filtered ESI would take an additional thirteen weeks and could cost an additional $600,000. Therefore, the Guardian Defendants have met their burden of demonstrating that the ESI sought by Thermal Design is not reasonably accessible.

In spite of this showing, the Court "may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." Under these provisions, the Court must limit discovery if it is unreasonably cumulative or duplicative, if the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or if the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(i-iii). "The decision whether to require a responding party to search for and produce information that is not

reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case." Advisory Committee Notes, 2006 Amendment, Subdivision (b)(2).

Thermal Design makes virtually no effort to demonstrate that the continuing burden of additional ESI is "justified in the circumstances of the case." Thermal Design's motion focuses mainly on its theory that the Guardian Defendants should have produced more ESI pursuant to the parties' Agreement for Electronic Discovery. Thermal Design also dismisses the defendants' complaints about undue burden because the Guardian Defendants are a series of large companies with considerable resources. This is simply not enough to establish good cause under the Federal Rules. Even if the information sought is relevant or reasonably calculated to lead to the discovery of admissible evidence, Thermal Design doesn't explain why the extensive amount of information it seeks is of such importance that it justifies imposing an extreme burden on the Guardian Defendants. Fed. R. Civ. P. 26(b)(2)(C)(iii) (factors include "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues"). Courts should not countenance fishing expeditions simply because the party resisting discovery can afford to comply.

Also before the Court is the Guardian Defendants' motion to compel answers to its Fifth Set of Interrogatories, Numbers 31 and 32. These interrogatories are related to the defendants' counterclaims for false advertising, defamation, commercial disparagement and interference with contract. Interrogatory No. 31 asks Thermal Design to separately "identify

each Advertisement in which Thermal Design references the following subjects: . . .," followed by 13 subparts, including "OSHA and fall protection," "Guardian or Guardian's products," and "life endangering tactics of a competitor to Thermal Design." Thermal Design objected and stated that it has "produced all advertisements it has identified that would contain the information responsive to this interrogatory." As a follow-up, Interrogatory No. 32 asks, "For each Advertisement referenced in response to Interrogatory No. 31, identify: (a) the type and dates of such Advertisements; (b) to whom the Advertisement was distributed; (c) the number of copies of each Advertisement that was distributed; (d) how the Advertisements were distributed; (e) the total amount spent by Thermal Design in connection with each Advertisement; (f) the impact, if any, that such Advertisements had on consumers in the United States; (g) the total number of persons Thermal Design believes were exposed to each such Advertisement and the basis for this conclusion (e.g., bases upon circulation numbers, statistics from Thermal Design's internet web site, etc.)." Thermal Design objected and did not respond to this interrogatory.

Rule 33 provides that "unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." The parties in this case stipulated to 35 interrogatories per side, but Thermal Design argues that these interrogatories, standing alone and also in combination with prior interrogatories, exceed the allowable number both because of the large number of responsive documents and also by the excessive use of subparts. Rule 33 does not define

"discrete subparts," but the local rules of this judicial district emphasize that the number of permissible interrogatories "may not be expanded by the creative use of subparts." Civil L.R. 33(a)(1)(E.D. Wis.) After surveying a variety of district court opinions, Professor Moore concludes that the "better view is that subparts may be counted as part of one interrogatory if they are logically and necessarily related to the primary question. However, when a subpart introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated. This approach is most consistent with the intent of the discovery rules to provide information, not hide information, within reasonable limits." 7-33 Moore's Fed. Practice - Civil § 33.30. For example, one district court held that if the first question can be answered fully and completely without answering the second question, then the second question is not "factually subsumed within and necessarily related to the primary question." *Estate of Manship v. United States*, 232 F.R.D. 552. 555 (M.D. La. 2005); *see also Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (interrogatory subparts are to be counted as one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question).

Applying this standard, it is clear that Interrogatories 31 and 32 violate the spirit of the rule and far exceed the allowable amount of interrogatories. Number 31 is essentially 13 different interrogatories, asking Thermal Design to identify each advertisement that references various subject matter, including "formaldehyde (in any form)" or "the method of seaming the fabric used in insulation systems for metal buildings." Each line of inquiry

is "separate and distinct" and none of the questions are "factually subsumed" within a prior question. Moreover, after identifying advertisements (Thermal Design estimates that there may be over 500 responsive documents), interrogatory number 32 asks seven separate and distinct questions about each of those documents.

Defendants request a good cause determination to allow excess interrogatories, but the Court concludes that this would be premature. Defendants rejected Thermal Design's compromise suggestion of 50 advertisements. The parties should revisit this suggestion pursuant to the meet and confer provisions of the local rules. Civil L.R. 33(a)(3) (E.D. Wis.)

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Thermal Design's motion to compel [D. 128] is **DENIED**; and

2. Defendants' motion to compel [D. 136] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 20th day of April, 2011.

                                         **SO ORDERED,**

                                         *s/ Rudolph T. Randa*
                                         **HON. RUDOLPH T. RANDA**
                                         **U.S. District Judge**