# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THERMAL DESIGN, INC.,**

    Plaintiff,

                       **Case No. 08-C-828**

  -vs-

**GUARDIAN BUILDING PRODUCTS, Inc.,
GUARDIAN BUILDING PRODUCTS
DISTRIBUTION, INC., GUARDIAN
FIBERGLASS, INC. and CGI/SILVERCOTE, Inc.,**

    Defendants,

and

**VALLEY FORGE INSURANCE COMPANY and
CONTINENTAL CASUALTY COMPANY,**

    Intervening Plaintiff,

  -vs-

**THERMAL DESIGN, Inc. and CGI/SILVERCOTE, Inc.,**

    Defendants in Intervention.

## DECISION AND ORDER

    The Guardian Defendants and Defendant CGI/Silvercote, Inc. move to strike errata changes to the deposition transcripts of Leslie L. Christianson. Mr. Christianson is a fact witness and an expert witness for the plaintiff, Thermal Design, Inc. The defendants object to ten changes to the expert deposition and six changes to the fact deposition.

Upon request, a deponent is allowed 30 days to "review the transcript or recording" and to make "changes in form or substance." Fed. R. Civ. P. 30(e)(1)(A),(B). "Some courts have concluded that, because the rule places no limitations on the type of changes, a deponent may make *any* changes in form and substance, even if the changes contradict the original answers or even if the reasons for making the changes are unconvincing." 7 MOORE'S FED. PRACTICE 3d § 30.60[3] (emphasis in original). Other courts find that Rule 30(e) "cannot be used to substantially alter what was said under oath." *Id.* The Seventh Circuit adheres to the stricter rule. By "analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition . . . a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) (internal citations omitted); *see also Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 710 F. Supp. 2d 777, 790-92 (N.D. Ind. 2010) (applying *Thorn*); *Citgo Petroleum Corp. v. Ranger Enter., Inc.*, 632 F. Supp. 2d 878, 883-84 (W.D. Wis. 2009) (same).

Mr. Christianson's errata changes are significant and substantial. The Court will not reproduce all of them here. The interested reader is referred to the tables that are interspersed in the defendant's memorandum. D. 168. Here are a some examples:

| Original Testimony | Changed Testimony |
|---|---|
| Q Does that show your practical – lack of practical understanding of thermal testing?<br><br>A I have never claimed to be a – you know, I've got a pretty good knowledge of thermal testing. I've built and operated a guarded hot box that was a primitive one when I was doing some earlier work on alternative insulations products. So <u>I understand generally about hot plates and guarded</u> – and guarded hot box.<br><br>**I've not – I don't – <u>I don't claim to be an expert on that beyond</u> – I mean, I don't want to use the – say "don't claim to be an expert" because then that gets confusing from a legal perspective, but <u>I don't claim</u> – I claim to be an expert broadly in, you know, insulation and stuff. That's not the area that I have my most expertise in.** | Q Does that show your practical – lack of practical understanding of thermal testing?<br><br>A I have never claimed to be a – you know, I've got a pretty good knowledge of thermal testing. I've built and operated a guarded hot box that was a primitive one when I was doing some earlier work on alternative insulations products. So I understand generally about hot plates and guarded – and guarded hot box.<br><br>**My <u>primary expertise</u> on insulation and <u>insulation systems</u> is not guarded hot boxes and hot plates. I claim to be an expert broadly on insulation, <u>but most particularly on the performance of insulation materials and designs and systems for the insulation systems</u>.** |

| Original Testimony | Changed Testimony |
|---|---|
| Q Okay. Then how did you come up with the number of 2 inches?<br><br>A From a 25-by-25 **scale frame, if you will, helped install and measure the parabola that resulted on each of these three points.**<br>... | Q Okay. Then how did you come up with the number of 2 inches?<br><br>A From a 25-25 frame, **which had purlins and beams spaced <u>as in typical metal buildings</u>. I helped install a liner system and measure the parabolas that resulted at . . .** |

| Original Testimony | Changed Testimony |
|---|---|
| Q And you said that you were involved with them on a regular basis in terms of what they were doing with respect to each one of their papers; isn't that correct?<br><br>A Well, **on the writing of the papers, it wasn't that**, but the papers were written two hours – I mean, they were – the papers were written in 2009, but we were communicating then. | Q And you said that you were involved with them on a regular basis in terms of what they were doing with respect to each one of their papers; isn't that correct?<br><br>A We were **involved regularly when we were developing the model, collecting the data and using the model, which was in spring and summer of 2008. We were writing the papers in mid to late 2009, and communicated less frequently**. |

| Original Testimony | Changed Testimony |
|---|---|
| Q So why would you ever belief that this was a test of a system that is representative – that is a complete system, a completed system that was tested?<br><br>A Because, as I indicated, this photograph had been provided by Tom Petrie – | Q So why would you ever belief that this was a test of a system that is representative – that is a complete system, a completed system that was tested?<br><br>A Because, as I indicated, this photograph had been provided by Tom Petrie **who stated that this was intended to represent a purlin glide system, but it clearly is not representative of purlin glide field installations**. |

| **Original Testimony** | **Changed Testimony** |
|---|---|
| Q If you're not comparing – comparing apples to apples, let's say we're not comparing just thermal insulation performance to just insulation performance, we're not concluding anything else, is that what you're saying you did with Mr. Petrie's –<br><br>A With Mr. Petrie's data on over-the-purlin systems, I compared the contribution to the insulation, effective insulation, from the insulation profile thicknesses, in knowing what the insulation was. And **if that is an apples-to-apples comparison** with what's going to happen in a guarded hot box, and the only question then is whether you have accurate descriptions of the insulation thicknesses. | Q If you're not comparing – comparing apples to apples, let's say we're not comparing just thermal insulation performance to just insulation performance, we're not concluding anything else, is that what you're saying you did with Mr. Petrie's –<br><br>A With Mr. Petrie's data on over-the-purlin systems, I compared the contribution to the insulation, effective insulation, from the insulation profile thicknesses, in knowing what the insulation was. And **that is an apples-to-apples comparison** with what's going to happen in a guarded hot box, and the only question then is whether you have accurate descriptions of the insulation thicknesses. |

These are substantial alterations that contradict the original testimony. Thermal Design argues that the purpose of the changes is to reflect what Mr. Christianson meant to say. But there is a difference between what Mr. Christianson meant or even hoped to say with the benefit of hindsight and what he *actually said*. Thermal Design does not argue that Christianson is correcting simple errors in transcription. Rule 30 "cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all and then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Burns v. County Commr's of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003) (quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)).

-5-

The defendants ask the Court to bar Thermal Design from offering any evidence or testimony that contradicts Mr. Christianson's original answers and from offering any evidence or testimony to support answers or testimony sought through the errata changes. The logic of this request derives from the "sham affidavit rule," which provides that a party cannot defeat summary judgment by filing an affidavit that directly contradicts prior sworn testimony. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 270 (3d Cir. 2010) (finding "no principled reason to distinguish between affidavits and errata sheets in this context"); *Thorn*, 207 F.3d at 389. The defendants have yet to move for summary judgment, but they are obviously planning to do so. Permitting the use of "contradictory alterations could risk the defeat of summary judgment in a large swath of cases for which a Rule 56 disposition otherwise would be appropriate. Preservation of the original testimony for impeachment at trial serves as cold comfort to the party that should have prevailed at summary judgment. And reopening the deposition before disposition might not be a sufficient remedy, for the deponent who has reviewed his original testimony and settled on an opposite answer may prove unimpeachable." *EBC* at 268. The Court will not impose the defendants' requested sanction at this time, but any attempt to rehabilitate Christianson's testimony at the summary judgment stage would be subject to scrutiny under the sham affidavit rule.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** the defendants' motion to strike changes to the depositions of Leslie Christianson [D. 167] is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 5th day of December, 2011.

**BY THE COURT**:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**