# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

THERMAL DESIGN, INC.,

                Plaintiff,

                                      **Case No. 08-C-828**

    -vs-

GUARDIAN BUILDING PRODUCTS, INC.,
GUARDIAN BUILDING PRODUCTS
DISTRIBUTION, INC., and GUARDIAN
FIBERGLASS, INC.,

                Defendants.

---

## DECISION AND ORDER

On June 15, 2012, the Court held that some of Thermal Design's false advertising claims could proceed past summary judgment, but that Thermal Design could not recover monetary damages. ECF No. 256; 2012 WL 2254195. Guardian now moves to strike Thermal Design's jury demand in light of the Court's ruling on damages, which ruling Thermal Design moves to reconsider.

The Court granted Guardian's motion for summary judgment on damages because Thermal Design failed to produce evidence that it was "damaged by actual consumer reliance on the misleading statements," while Guardian, on the other hand, "produced evidence which demonstrates that consumers were not confused by Guardian's ads." Order at 18; 2012 WL 2254195, at *9. Thermal Design argues that the Court misapplied the law because this is a literal falsity case, which means that a "presumption of consumer deception" applies.

*Cashmere & Camel Hair Mfr. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 314 (1st Cir. 2002). "Because proof of 'actual confusion' can be difficult to obtain, most of the circuits have ruled that when a statement is literally false, a plaintiff need not demonstrate actual consumer deception in order to obtain relief under the Lanham Act." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 693 (6th Cir. 2000) (internal citation omitted). "What the cases mean when they say that proof of literal falsity allows the plaintiff to dispense with evidence that anyone was misled or likely to be misled is that the seller who places an indisputably false statement in his advertising or labeling probably did so for a malign purpose, namely to sell his product by lies, and if the statement is false probably at least some people were misled, and since it was a lie why waste time on costly consumer surveys." *Schlering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009)

The Court did not ignore the presumption of actual consumer confusion. Instead, the Court acknowledged the presumption, but noted that a plaintiff seeking monetary damages "must show more than a mere presumption of actual consumer confusion based on a finding of literal falsity." Order at 18; 2012 WL 2254195, at *9 (quoting *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 481 (D.N.J. 2009)). The literal falsity rule "has never permitted a plaintiff to recover marketplace damages without other proof that such damages occurred. . . . [L]iteral falsity, without more, is insufficient to support an award of money damages to compensate for marketplace injury such as harm to goodwill." *Balance Dynamics* 204 F.3d at 693. Accordingly, Thermal Design does not need to

-2-

demonstrate actual consumer confusion. However, Thermal Design still must prove that it suffered injury as a result of Guardian's advertising. *Bracco*, 627 F. Supp. 2d at 481 ("The plaintiff must link the deception with actual harm to its business"). This is what the Court meant when it stated that Thermal Design failed to produce any evidence that it was "damaged by actual consumer reliance on the misleading statements." Order at 18; 2012 WL 2254195, at *9 (quoting *L.S. Heath & Son, Inc. v. AT & T Info Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993), which cited *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir. 1990) and *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 206 (7th Cir. 1982)). As the Sixth Circuit explained in *Balance Dynamics*: "A contrary rule would risk conferring an undue windfall. . . . Balance Dynamics presented no evidence that its goodwill was harmed, or that customers were actually deceived by its advertisement. To the contrary, the evidence indicated that Balance Dynamics' business was not harmed by Schmitt's letters. Balance Dynamics' sales increased after the period in question, and there was no decrease in the price of its product. Further, Balance Dynamics admitted that no customers had ever informed it that it was losing a sale due to the Schmitt communications." 204 F.3d at 694.

The concept of "actual consumer reliance" as expressed in the Seventh Circuit case law is simply another way of stating that a plaintiff must demonstrate a causal connection between the advertisement and the plaintiffs' damages. "A party seeking [damages] is required to show *not only the likelihood of such confusion*, but must demonstrate that it has been damaged by *actual consumer reliance on the misleading statements*." *Schutt* 673 F.2d at 206 (emphasis added). Consumer reliance and consumer confusion are separate concepts,

although they are obviously related. Consumer confusion can be used to demonstrate consumer reliance, and consumer reliance assumes the existence of consumer confusion. If the plaintiff offers evidence that consumers were deceived by a false representation which influenced their purchasing decisions, this would show that the plaintiff was damaged by the advertisement. But there are other ways to prove an entitlement to damages besides offering evidence of consumer confusion. *See Schutt* 673 F.2d at 207 ("Such reliance may be shown not only by evidence of actual diversion of sales, but also by such proof of actual customer deception as surveys, or testimony of a dealer, distributor, or customer on the actual deception issue"); *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 740 (8th Cir. 2000) (evidence of eroding revenues, corresponding increase in competitors' revenues, and loss of sales force "supports an inference that the shift in the companies' market shares was due to [defendants'] misconduct") (internal citations omitted); *Cashmere*, 284 F.3d at 319 (the "commonsense inference" that "using inexpensive materials that are represented as something more valuable would generally create a substantial competitive advantage by undercutting competitors who correctly represent their products" is enough to "demonstrate the causal link between the harm [plaintiffs] suffered and defendants' misrepresentations").[1] Where, as here, the "statement in question" is alleged to be "actually false, then the plaintiff need not show that the statement actually deceived consumers or was likely to do so." *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999).

---

[1] The rule stated in *Web Printing* – that a plaintiff seeking damages must prove that the violation "caused *actual confusion* among consumers of the plaintiff's product, and, as a result, that the plaintiff suffered actual injury, *i.e.*, a loss of sales, profits, or present value (goodwill)," 906 F.2d at 1205 (emphasis added) – is not to the contrary because *Web Printing* was not a literal falsity case.

That being said, Thermal Design's motion for reconsideration is well-taken because the Court failed to take note of Robert Bero's expert opinion on damages. In other words, Thermal Design *did* present evidence that it was damaged by the misleading statements in Guardian's advertisements. Guardian argues that this is not competent evidence because it fails to demonstrate consumer confusion, but again, confusion is presumed in a literal falsity case, and evidence of actual consumer confusion is not the only way of proving damages. The balance of Guardian's arguments go to the weight of this evidence, but assuming its admissibility, Bero's opinion is enough to create a genuine issue of fact for trial.

Since legal remedies are once again on the table, Guardian's motion to strike the jury demand must be denied.

Therefore, **IT IS HEREBY ORDERED THAT** Thermal Design's motion for reconsideration [ECF No. 262] is **GRANTED**, and Guardian's motion to strike Thermal Design's jury demand [ECF No. 258] is **DENIED**.

**IT IS ALSO ORDERED THAT** on **December 19, 2012** at **1:30 pm (CST)**, the Court will initiate a conference call to discuss matters relating to the ultimate disposition of this case, including dates for trial and a possible briefing schedule for pre-trial motions.

Dated at Milwaukee, Wisconsin, this 16th day of November, 2012.

**BY THE COURT**:

HON. RUDOLPH T. RANDA
**U.S. District Judge**