UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THERMAL DESIGN, INC.,

                Plaintiff,

     -vs-                                    Case No. 08-C-828

GUARDIAN BUILDING PRODUCTS, INC.,
GUARDIAN BUILDING PRODUCTS
DISTRIBUTION, INC., and GUARDIAN
FIBERGLASS, INC.,

                Defendants.

## DECISION AND ORDER

On June 15, 2012, the Court held that some of Thermal Design's false advertising claims against Guardian Building Products could proceed past summary judgment, but that Thermal Design could not recover monetary damages because Thermal Design failed to produce any evidence that it was damaged by actual consumer reliance on the misleading statements. ECF No. 256, Decision and Order at 18; 2012 WL 2254195, at *9. On November 16, the Court granted Thermal Design's motion for reconsideration and denied Guardian's motion to strike Thermal Design's jury demand because the Court "failed to take note of Robert Bero's expert opinion on damages. In other words, Thermal Design *did* present evidence that it was damaged by the misleading statements in Guardian's advertisements. Guardian argues that this is not competent evidence because it fails to demonstrate consumer confusion, but . . . confusion is presumed in a literal falsity case, and evidence of actual consumer confusion is not the only way of proving damages." ECF No.

270, Decision and Order at 5; 2012 WL 5835797, at *2 (emphasis in original). Guardian now moves for an order precluding Mr. Bero from testifying that Guardian's advertisements caused Thermal Design to suffer damages recoverable at law.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, as revised in response to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), which provides that an expert who is qualified by "knowledge, experience, training, or education" can testify in the form of an opinion if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" if the expert's testimony is "based on sufficient facts or data" and is the product of "reliable principles and methods;" and if the expert has "reliably applied the principles and methods to the facts of the case." The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Although the Court is required to perform its role as gatekeeper, a district court's determinations on admissibility "should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross examination." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010).

As the Court explained in its original summary judgment ruling, starting in late 2007, Guardian began advertising that its Energy Saver FP System provides OSHA-compliant leading edge fall protection, and there is a genuine issue of material fact as to whether such advertisements are literally false. 2012 WL 2254195, at *5. Thermal Design argues that

Bero's opinion establishes a causal connection between Thermal Design's damages and Guardian's advertisements. According to Bero:

> The Energy Saver System sales increases beginning in 2008 do not appear to be attributable to the metal building insulation market growing. Rather, Guardian achieved these increased sales with its FP system during years when the metal building industry was relatively depressed. Considering Guardian's Energy Saver System sales in 2007 as well as the comparatively weak market (*i.e.*, the new metal roofing on metal buildings market) from 2008 through 2009, it would reasonably follow that Guardian's Energy Saver System sales would have remained at its historical levels or below for those years, *but for the introduction of the FP version*. Correspondingly, those sales Guardian achieved with its FP version of the Energy Saver System that are above those historical levels represent *incremental sales reasonably attributable to the fall protection*.

ECF No. 273-9, Ex. 1 (Bero Report at 30) (emphasis added).

As explained by Mr. Bero, the fabric liner system market was a two-supplier market during the time period relevant to this lawsuit, so the inference is that an increase in sales for Guardian represents lost sales for Thermal Design. Guardian argues that Bero's opinion should be excluded because he failed to account for obvious alternative explanations for Guardian's increase in sales. Rule 702, Advisory Committee Notes, 2000 Amendments (paragraph four, third factor listed); *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) (a statistical study that "fail[s] to correct for salient factors, not attributable to the defendant's conduct, that may have caused the harm of which the plaintiff is complaining do[es] not provide a rational basis for a judgment"). For example, when Guardian introduced the Energy Saver, it simultaneously stopped selling Thermal Design's product to focus on selling its own product. Bero acknowledges this fact, but fails to explain why it cannot account for Guardian's increase in market share. Moreover, between 2007 and 2008, sales increased for Guardian *and* Thermal Design. In

-3-

other words, the demand for fabric liner systems was growing, and both parties took advantage. *See, e.g., Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 693-94 (6th Cir. 2000) ("To the contrary, the evidence indicated that Balance Dynamics' business was not harmed by Schmitt's letters. Balance Dynamics' sales increased after the period in question, and there was no decrease in the price of its product"). Bero explains that the increase in the fabric liner system market would not necessarily account for Guardian's increase in market share, but his analysis falls short of ruling it out as a contributing factor.

Guardian also argues that the ESFP was significantly cheaper than Thermal Design's product. Bero seems to disagree, writing that the two systems sold for a "reasonably comparable price from 2005 through 2010." Report at 22. To the contrary, Bero agreed at his deposition that a number of sales were lost because of price. ECF No. 273-11, Ex. 3, Bero Dep. at 414 ("The decision maker for this particular project was buying from Guardian over the Simple Saver System because [of] incredibly cheap prices"); *Id.* at 400 ("in public bid scenarios . . . it's generally the lowest bidder that gets the job"). Ultimately, Bero conceded that sales were lost because of issues "unrelated to . . . fall protection." *Id.* at 416. Indeed, Thermal Design's own employees observed that they were losing sales because of price and other factors unrelated to fall protection. ECF No. 273-12, Ex. 4, TD0006520 (noting a customer's response that fall protection "isn't worth anything"). Accordingly, Bero's opinion does not provide a reliable basis for establishing that Thermal Design was damaged by Guardian's advertisements.

-4-

To be sure, Guardian employees testified that fall protection is a relevant factor in the marketplace, and Bero expressly considered this testimony in formulating his opinion. ECF No. 216-1, Thermal Design's Proposed Findings of Fact, ¶¶ 129, 131 ("thermal performance and fall protection are the most important factors a potential customer considers when deciding whether to buy the ESFP"); (fall protection is "something [customers] would consider in whether or not to purchase the ESFP"). But this evidence does not create an issue of fact regarding "actual consumer reliance on the misleading statements." *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 206 (7th Cir. 1982). Accordingly, Thermal Design has no legal claim for damages under the Lanham Act. *See, e.g., Toro Co. v. Textron, Inc.*, 499 F. Supp. 241 (D. Del. 1980) ("In the absence of any evidence that any particular distributor, dealer, or consumer has been personally misled, . . . [the] damage claim must be denied"). As a result, Thermal Design is limited to equitable remedies and cannot take its case to a jury. *See, e.g., Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 123 F. Supp. 2d 203, 206 (S.D.N.Y. 2000) (granting a motion to strike a jury demand because a claim for disgorgement of profits is an equitable claim, not a legal claim); *Am. Cyanamid Co. v. Sterling Drug, Inc.*, 649 F. Supp. 784, 789 (D.N.J. 1986) ("In substance, American Cyanamid seeks a determination whether Sterling Drug was enriched because of an infringement and, if so, an order requiring restitution of such money from Sterling Drug to American Cyanamid. These demands are equitable in nature. Accordingly, the determination of whether there is a right to a jury trial in this case is not decided merely on the choice of the words of phrasing used in the pleadings").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Guardian's motion to preclude Richard Bero from offering testimony that Guardian's introduction of fall protection was the only reason Guardian's sales increased and caused consumers to purchase Guardian's Energy Saver product instead of Thermal Design's Simple Saver System [ECF No. 272] is **GRANTED**; and

2. Guardian's motion to strike Thermal Design's jury demand [ECF No. 258] is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 15th day of April, 2013.

**BY THE COURT**:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**